Romaine C. Marshall (#9654)
Engels. J. Tejeda (#11427)
Karina Sargsian (#14775)
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
RCMarshall@hollandhart.com
EJTejeda@hollandhart.com
KSargsian@hollandhart.com

*Counsel for Plaintiff Trimr, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| TRIMR, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PERFECTSHAKER.COM, INC.<br><br>Defendant. | **COMPLAINT**<br><br><br>Civil No. _____<br><br>Judge _____ |

Plaintiff Trimr LLC alleges and complains against Defendant Perfectshaker.com ("Perfect Shaker") as follows:

## PARTIES

1. Plaintiff Trimr, LLC is a Utah limited liability company with a principal place of business in Salt Lake County, Utah.

2. Trimr owns all rights, title, and interest in U.S. Patent No. 9,839,888, which is the subject of this lawsuit.

3. Perfect Shaker, on information and belief, is a Canadian limited liability company with a principal place of business in Alberta, Canada.

## JURISDICTION AND VENUE

4. This action arises under the Patent Act (35 U.S.C. § 271). This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

5. This action also arises under the Lanham Act. This Court also has subject matter jurisdiction under § 39 of the Lanham Act (15 U.S.C. § 1121), and 28 U.S.C. § 1338.

6. Perfect Shaker actively conducts business in the State of Utah, either directly through the Internet or through distributors, and has received orders from, and has filled and shipped orders to, the State of Utah for the infringing products. These tortious acts form the basis of Trimr's claims against Perfect Shaker. As a result, this Court has personal jurisdiction over Perfect Shaker.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

8. Trimr manufactures, sells, and distributes a portable mixer bottle under the TRIMR mark (the "TRIMR").

9. Trimr has invested heavily to protect its intellectual property rights relating to the TRIMR bottle. The utilitarian aspects of the TRIMR are covered by U.S. Patent No. 9,839,888 (the "888"). A copy of the '888 patent is attached as Exhibit A.

10. The TRIMR bottle is cloaked with a distinctive trade dress, which includes a translucent mixer cup (in various colors) topped by a lid with the same color as the cup. The hand-held shakable container has an hourglass figure and includes a substantially vertical

member with a connected agitator that moves vertically along a rigid axis.  Representative advertisements depicting the TRIMR trade dress are attached as Exhibit B.

11. On or about February 15, 2013, Perfect Shaker contacted Trimr to inquire about the possibility of receiving exclusive distribution rights for the TRIMR bottle in Canada.

12. On or about March 1, 2013, Perfect Shaker inquired of Trimr about the possibility of acquiring Trimr.

13. In May 2013, Perfect Shaker and Trimr executed a Mutual General Nondisclosure Agreement ("NDA") in order to explore the possibility of Perfect Shaker purchasing Trimr.  The NDA is in effect for five years, ending on May 6, 2018.  A copy of the NDA is attached as Exhibit C.

14. In reliance upon protections agreed to in the NDA, Trimr disclosed to Perfect Shaker proprietary and confidential information including, but not limited to:

   a. Customer lists—including existing and potential customers;

   b. Financial information such as sales history and manufacturing costs;

   c. Marketing strategy and manufacturing contacts; and

   d. Intellectual property strategy and product design information.

15. On May 9, 2013, Perfect Shaker sent Trimr a Term Sheet indicating its interest in acquiring Trimr for $2,000,000.

16. After Trimr replied that it believed the company was worth more, Perfect Shaker sent Trimr a second Term Sheet on May 15, 2013, indicating its interest in acquiring the company for $3,000,000.

17. Perfect Shaker stated that it would only be willing to initially pay five percent of the purchase price, and only after an additional condition was met—its receipt of a leak free mold of the TRIMR bottle from Trimr.

18. In order to verify that Perfect Shaker had the financial means to pay the remaining 95% of the agreed upon price, Trimr requested balance sheets, and profit and loss documents from Perfect Shaker, and personal financial statements from Perfect Shaker's founders.

19. Trimr's requested information was denied. Instead, Perfect Shaker changed its position, stating that instead of acquiring Trimr it only wanted distribution rights for Trimr products in Canada.

20. On or about August 15, 2015, Trimr received information from its contact at Bodybuilding.com that Perfect Shaker had sent them its Perfect Shaker "Slim" bottle which was identical to Trimr's bottle both in utility and design. A copy of the Perfect Shaker Slim bottle is attached as Exhibit D.

21. On September 9, 2015, Trimr contacted Perfect Shaker *via* phone to discuss the infringing bottle. Perfect Shaker claimed that it had only ordered 10,000 bottles with Trimr's design, had only sent its bottle to two companies, and that it had not yet sold any.

22. During the September 9, 2015 telephone call, Perfect Shaker stated that it had obtained legal advice that the utility part of its bottle did not infringe (the "Legal Advice Letter").

23. On September 12, 2015, Perfect Shaker emailed to Trimr a copy of the letter it referenced in Paragraph 22.

24. The Legal Advice Letter reviewed Perfect Shaker's product design against United States Patent No. 7,441,941, United States Patent No. 6,379,032, and Trimr's pre-grant United States Publication No. 2014/0119154. *Id.*

25. Regarding Trimr's pre-grant publication application '154, the Legal Advice Letter stated:

> The '154 patent is still pending and has not yet issued. At this time, it is impossible to determine the likelihood of infringement as the Applicant may amend the claims at any time during the prosecution, and may file a divisional or continuation application.
>
> While a full analysis of the pending claims has not been conducted, it is noted that each of the independent claims in the '154 patent refers to a straw that is used as a guide rod. In contract to this, the guide rod in your bottle is sealed on both ends, and the lid does not have an opening to allow the guide rod to be used as a straw.

26. On or about September 22, 2016, Trimr's counsel sent a letter to Perfect Shaker notifying Perfect Shaker that it had violated the NDA, infringed on Trimr's patent, and employed a former employee of Trimr who was bound by a non-compete agreement. A copy of the September 22, 2016 letter is attached as Exhibit E.

27. After the September 22, 2016 letter, the parties again began discussions for the acquisition of Trimr by Perfect Shaker.

28. After discussions fell through, Trimr's attorney on December 29, 2016, sent a letter to Perfect Shaker reminding it that Perfect Shaker is infringing upon Trimr's patent, has violated the NDA, and tortiously interfered with Trimr's non-compete agreement with its previous employee. A copy of the December 29, 2016 letter is attached as Exhibit F.

29. Notwithstanding Perfect Shaker's agreement in the NDA to "treat all information exchanged as proprietary and confidential," on information and belief, Perfect Shaker has converted the proprietary and confidential information of Trimr for its own use.

30. Perfect Shaker is well aware of the goodwill Trimr has established through its patent rights and distinctive trade dress in the TRIMR bottle.

31. On information and belief, Perfect Shaker adopted a marketing strategy and philosophy to intentionally and unlawfully trade off that goodwill that Trimr had built up by infringing Trimr's patent rights and trade dress rights. In isolation, any one of the infringement claims raised herein would be a serious problem. Collectively, Perfect Shaker's egregious misconduct yields only one conclusion: Perfect Shaker has adopted a strategy to deliberately pilfer and infringe Trimr intellectual property rights and unlawfully trade off the extensive goodwill Trimr has developed.

32. To date, Perfect Shaker has failed and refused to discontinue its theft of and infringement of Trimr's intellectual property rights. Accordingly, Trimr has no alternative but to seek the Court's assistance in resolving this matter.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract)

33. Trimr re-alleges and incorporates the preceding allegations of this Complaint.

34. On May 6, 2013, the parties executed an NDA.

35. The NDA is a valid and enforceable contract between the parties.

36. Perfect Shaker agreed, among other things, to "treat all information exchanged as proprietary and confidential" and for a period of five years from the date of receipt of the

proprietary information, "to use the same measures to avoid dissemination of each such proprietary document, . . . to any third party as recipient employs."

37. On information and belief, in direct violation of the clear and explicit terms of the NDA, Perfect Shaker has illicitly used for its own benefit the confidential and propriety information provided to it by Trimr.

38. Perfect Shaker's actions constitute a breach of the NDA.

39. Trimr has been damaged by Perfect Shaker's actions, and is, therefore, entitled to recover actual and consequential damages as a direct and proximate result of Perfect Shaker's breach of the NDA.

## SECOND CLAIM FOR RELIEF
(Breach of Good Faith and Fair Dealing)

40. Trimr re-alleges and incorporates the preceding allegations of this Complaint.

41. Trimr and Perfect Shaker entered into a valid and enforceable contract.

42. Trimr had a reasonable and good faith expectation that Perfect Shaker would act in good faith in performing its duties under the NDA.

43. Perfect Shaker acted purposely and intentionally to undermine Trimr's rights to receive the basic bargain of the agreement.

44. Perfect Shaker's actions and inactions, as described above, demonstrate a course and pattern of actions that benefited its own interests to the detriment of Trimr.

45. Perfect Shaker's actions, as detailed above, constitute a breach of the covenant of good faith and fair dealing.

## THIRD CLAIM FOR RELIEF
(Patent Infringement)

46. Trimr re-alleges and incorporates by this reference the preceding allegations of this Complaint.

47. Perfect Shaker imports, uses, sells, and offers for sale infringing portable mixer bottles on its websites, PERFECTSHAKER.COM and PERFORMABRAND.COM.  *See, e.g.,* the attached advertisements depicting Perfect Shaker's "PerfectShaker Slim – 600 ml," Ultimate Warrior WWE Collection Legends Series #5, and G.I. Joe (Black) G.I. Joe Collection Original Series #1 (collectively, the "SHAKERS") attached as Exhibits G.

48. Perfect Shaker's actions as described above, and specifically Perfect Shaker's unauthorized manufacture, use, importation, offers to sell, and sales of the SHAKERS constitutes infringement of the '888 patent.

49. Perfect Shaker's continued actions of making, using, importing, selling, offering for sale, and distributing the SHAKERS has injured, is injuring, and will cause irreparable injury to Trimr and Trimr's patent rights and exclusive market position if not preliminarily and permanently enjoined by this Court.

50. Trimr is entitled to an injunction prohibiting Perfect Shaker from further making, importing, using, selling, offering for sale, or otherwise distributing the SHAKERS without permission or license from Trimr under 35 U.S.C. § 283.

51. Trimr is entitled to recover all damages caused by Perfect Shaker's infringement, together with prejudgment interest and costs under 35 U.S.C. § 284.

52. On information and belief, Perfect Shaker's infringement is willful, or at the very least, in reckless disregard of Trimr's patent rights.  Perfect Shaker had knowledge of Trimr's

patent rights and other proprietary information, but proceeded to copy Trimr's bottle despite an objectively high risk that it would infringe a valid patent. Because Perfect Shaker has continued to manufacture, import, use, offer to sale, sell, and otherwise distribute the SHAKERS after having actual knowledge of the '888 patent without any defense, Trimr is entitled to treble damages under 35 U.S.C. § 284.

53. This is an exceptional case. Trimr is, therefore, entitled to an award of attorney's fees under 35 U.S.C. § 285.

## FOURTH CLAIM FOR RELIEF
(Trade Dress Infringement – Lanham Act § 43(a))

54. Trimr re-alleges and incorporates by this reference the preceding allegations of this Complaint.

55. Trimr is entitled to legal protection of its TRIMR trade dress under § 43(a) of the Lanham Act, which trade dress includes, without limitation, a translucent hourglass mixer cup (in various colors) topped by a lid with the same color as the cup, and a double vortex-shaped piston-like agitator that moves vertically along a rigid axis.

56. The TRIMR trade dress acquired secondary meaning—consumers have come to recognize the TRIMR trade dress as identifying Trimr as the source of the high quality TRIMR trade dress.

57. Perfect Shaker has so closely imitated and/or copied the TRIMR trade dress that the consuming public has been confused, and will continue to be confused, as to the source or origin of Perfect Shaker's products, and will erroneously believe that Perfect Shaker's products come from Trimr. In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the TRIMR and the Perfect Shaker Slim are substantially the same, and the

resemblance is such to deceive an observer, inducing him to purchase the Slim supposing it to be the TRIMR.  Additionally, Perfect Shaker's other shaped mixing cups that include a double vortex-shaped agitator that moves vertically along a rigid axis are substantially the same, and the resemblance is likely to deceive an observer.

58. On information and belief, Perfect Shaker's copying of the TRIMR trade dress was intentional; Perfect Shaker intended to create portable mixer bottles confusingly similar in appearance to the TRIMR; and Perfect Shaker has succeeded in producing portable mixer bottles, which are confusingly similar in appearance to the TRIMR.

59. The Perfect Shaker Slim and double vortex-shaped agitator are strikingly similar, substantially duplicated, virtually identical, substantially identical, remarkably similar, essentially duplicated, and/or closely imitated with the TRIMR.

60. Perfect Shaker's acts of trade dress infringement have caused injury to Trimr.

61. Trimr may recover for its damages an award to compensate Trimr for injuries and damages it has sustained as a result of Perfect Shaker's conduct, which violates § 43(a) of the Lanham Act.

62. Because Perfect Shaker's acts were intentional, willful, and/or deliberate, Trimr is entitled to an award of treble damages under § 43(a) of the Lanham Act.

63. Trimr is entitled to an award of pre-judgment interest for the damages sustained as result of Perfect Shaker's wrongful conduct.

64. Perfect Shaker's wrongful, malicious, fraudulent, deliberate, willful, intentional, and/or incredible conduct makes this an exceptional case entitling Trimr to an award of attorney's fees and costs under the Lanham Act.

65. Trimr has no adequate remedy at law; Trimr has suffered, and continues to suffer, irreparable harm as a result of Perfect Shaker's acts, and is, therefore, entitled to preliminary and permanent injunctive relief to enjoin Perfect Shaker's wrongful conduct.

## **REQUESTS FOR RELIEF**

WHEREFORE, Trimr requests that:

A. The Court preliminarily and permanently enjoin, in the U.S., Perfect Shaker, its officers, directors, principals, agents, servants, employees, successors and assigns, and all others aiding, abetting, or acting in concert or active participation therewith, from making, using, importing, selling, or offering for sale, or otherwise distributing any product that infringes the '888 patent, including without limitation, the SHAKERS;

B. The Court enter judgment against Perfect Shaker for direct infringement of the '888 patent under 35 U.S.C. § 271;

C. The Court enter judgment against Perfect Shaker for trade dress infringement;

D. The Court order that Perfect Shaker account to Trimr for all sales, revenues, and profits derived from the sale or other distribution of the SHAKERS and any similar infringing product, and that Perfect Shaker pay to Trimr all compensatory damages to which Trimr is entitled by law, including, without limitation, lost profits, reasonable royalties, price erosion damages, entire market value damages, and convoyed sales damages;

E. The Court award Trimr up to three times the damages found pursuant to 35 U.S.C. § 284;

F.      The Court award Trimr against Perfect Shaker, the costs and reasonable attorney's fees and expenses incurred in this action pursuant to 35 U.S.C. § 285 and the equitable powers of this Court;

G.      The Court award Trimr pre-judgment interest against Perfect Shaker on all sums allowed by law pursuant to 35 U.S.C. § 284; and

H.      The Court award Trimr such further relief as the Court may deem appropriate.

## JURY DEMANDED

Trimr demands that all claims and causes of action raised in this Complaint be tried to a jury to the fullest extent possible under the Utah and United States Constitution.

DATED this 3rd day of May, 2018.

Respectfully submitted,

HOLLAND & HART LLP

*/s/ Karina Sargsian*
Romaine C. Marshall
Engels J. Tejeda
Karina Sargsian
*Counsel for Plaintiff Trimr, LLC*

Plaintiff's address:

c/o HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, Utah  84101

## **INDEX OF EXHIBITS**

A  -  U.S. Patent No. 9,839,888.

B  -  Representative advertisements depicting the TRIMR trade dress.

C  -  Mutual General Nondisclosure Agreement.

D  -  A copy of the Perfect Shaker Slim bottle.

E  -  September 22, 2016, letter.

F  -  December 29, 2016 letter.

G  -  Advertisements.

10894765_1